## Anna Deppe, Administratrix, Appellee, v. Mobile & Ohio Railroad Company, Appellant.

VERDICTS—*when set aside and finding of facts entered.* If the evidence shows that no cause of action exists in favor of the plaintiff, the verdict will be set aside and finding of facts entered against the plaintiff.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Perry county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the March term, 1910. Reversed. Opinion filed August 5, 1910.

LANSDEN & LANSDEN and I. R. SPILLMAN, for appellant.

WEBB & WEBB and A. R. DRY, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

On October 2, 1908, Burbon Deppe, employed in loading coal, as a car trimmer, by the Willis Coal and Mining Company, was crushed between two coal cars on appellant's railroad at Willisville, in Perry county, Illinois, and injured so severely that death ensued. Appellee, his wife, was appointed administratrix of his estate, and brought this suit to recover damages alleging that the death of her husband was caused by the negligence of appellant.

The first trial resulted in a verdict for $2000 which was set aside by the court. On the second trial a verdict of $1750 was sustained by the court and judgment for that amount entered against appellant.

The only question raised by appellant and presented to this court is, whether plaintiff is entitled to recover under the facts in the case. As it appears from the proofs, appellant's road passed the mine of said mining company at Willisville in a northwesterly and southeasterly direction. At the tipple where the cars were loaded, there was a main track and east of it, three side tracks, the latter being numbered 1, 2 and 3, commencing with the one next to the main track. The side tracks were about 400 feet in length with a down

grade from the south towards the north, so that the cars when started would move along them towards the north by gravity, and the tipple was located about midway between the ends thereof. The side tracks were connected with the main track and between tracks 1 and 2, there were cross-over tracks, one south and one north of the tipple. At the time of the injury a man named Green and deceased were working, and to some extent were associated, as top men at the tipple. It was the duty of Green, who was called a "car pincher," to start the cars with a pinch bar from the south end of the side tracks and run them down to the chute where Deppe loaded and trimmed them and afterwards let them further down on the side tracks, from whence they were subsequently taken and hauled away by appellant. On the day in question, about four o'clock in the afternoon, which was near quitting time, Deppe moved a loaded car down track No. 1 and onto the cross-over leading to No. 2. At a point just beyond the place where the cross-over left track No. 1 was a post called a clearance post, its purpose being to indicate that when cars were beyond it on the cross-over, track No. 1 was clear. When deceased set said car on the cross-over the back end had not yet passed this post, although there was plenty of room on the cross-over to set it beyond and thus fully clear track No. 1. After this car was set in, deceased got on to another car and when it was loaded, started it down toward the car on the cross-over, which was about 130 feet from the tipple. The car was going about as fast as a person would ordinarily walk and Deppe was standing in the northeast corner of it, trying to work the brake which he was unable to do. As he could not set the brake the car proceeded on its way and the northeast corner of it, or the side of the car near that point, struck the southeast corner of the car on the cross-over and deceased was crushed between the two cars and killed.

There were two witnesses who saw the injury, one of whom thought Deppe jumped from the car he was on to the other car and attempted to set a brake there before he fell, while the other was sure he did not attempt to leave the car he was on. After the injury it was discovered that the brake on the

car deceased was riding, was bent so that it would not work and that its condition was such as to be readily discovered by one examining the same.

The first declaration filed, charged that the defective brake was on the car standing on the cross-over and that as deceased came down on the other car it struck the car on the cross-over and started it; that he jumped from the car he was on to the one on the cross-over to stop it and while attempting to use the brake, he was by reason of its defective condition, caught between the two cars and killed.

The amended declaration charged the defective brake as being on the other car, which was in accordance with the proof; that appellant had in its employ a car inspector, whose duty it was to inspect the braking apparatus.and attachments of cars furnished the mining company and that he negligently failed to make such examination and inspection of the car in question here, that deceased was using due care for his own safety while moving that car and was without any prior knowledge of the defective condition of the brake. There was evidence tending to show that the car on the cross-over belonged to appellant, and the one with the defective brake was a Warrior and Southern railroad car, and there was also evidence tending to show the position of the car was exactly the reverse.

The proof showed that it was not one of the duties of appellant's car inspector to inspect the brakes of the cars but that it was his duty to see that cars were safe to load and to run on the main line; that he did not mark or indicate cars with defective brakes only; that the coal company often received cars with defective brakes and that its top men had certain specific instructions and duties in reference to the same; that it was the duty of Green to examine the brakes and if he found them in bad condition to notify Deppe; that it was the duty of Deppe to see if cars loaded by him had defective brakes and if he found a defective brake he was to run the car to which it was attached, down the track and stop it with blocks a couple of car lengths from the chute and wait until he had a car with a good brake to fasten it to, so that the two could be let down together. Green testified that he discovered

the brake was defective and told Deppe of its condition, and that "he said it was near quitting time and it was only a short distance to the other car and if they did bump a little hard it wouldn't hurt anything; he said I will ride it out and do what I can with it." Another witness produced by appellee, however, testified that he heard Green make a statement while Deppe was being removed from between the cars, in conflict with that made by him on the trial as above stated and which tended to impeach Green's testimony upon that subject. If the testimony of Green in that regard was true, Deppe of course was fully advised of the condition of the car when he started and took upon himself the risk of running it down. But whether the testimony of Green was correct or not we do not consider of material importance in determining this case, as it was the duty of deceased himself to examine the brake and not to run the car down the track if he found it defective, and it appeared from the evidence that the defective condition of the brake would have been readily discovered had he examined it.

It further clearly appeared from the evidence that the deceased was negligent in not setting the first car far enough in on the cross-over track to be entirely clear of any car passing down track No. 1, as the second car was expected to do. The clearance post notified him where the line of safety was and there was nothing to prevent him from placing a car entirely beyond that post.

It is claimed by appellee, as a result of over loading, the corners of each car bulged out a distance of five or six inches and also that the side of the car on which Deppe was riding bulged out above the beam or bottom part and that this condition of the cars caused them to strike together. Even if this bulging condition of the beds of the cars were clearly shown it could not excuse deceased for taking the risk he did in leaving the first car so near track No. 1.

We conclude from such portions of the proof as were uncontradicted that deceased was guilty of negligence in starting car No. 2 down the track, either without examination of the brake which it was his duty to make, or with knowledge

of the same; and also that he was guilty of further negligence in failing to place car No. 1 far enough on the cross-over track to be entirely clear of cars proceeding down track No. 1 and that these acts of negligence on the part of deceased, contributed to bring about the injuries which caused his death.

The judgment of the court below will accordingly be reversed.

*Reversed.*

Finding of acts to be incorporated in the judgment: We find that at the time Burbon Deppe, appellee's intestate, received the injuries which resulted in his death, he was not in the exercise of due care for his own safety; and that he committed acts of negligence which materially contributed to causing his injuries and consequent death.